986 F.2d 1424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
GERMAN LANGUAGE PUBLICATIONS, INCORPORATED, Plaintiff-Appellant,
v.
KOMPAS TRAVEL, Slavoff Imports, Ljubo Todosijevic, Defendants,
and
Michael C. Goode and Euronews, Incorporated, Appellees.
 No. 91-3604.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 6, 1993.
Decided March 2, 1993.
 
 1
 Before EASTERBROOK and RIPPLE, Circuit Judges, and MILLER, JR., District Judge.*
 
 ORDER
 
 2
 German Language Publications, an importer of Yugoslavian[1] publications, appeals the district court's determination that Euronews, Inc., is a business independent from Mr. Ljubo Todosijevic's former importation and distribution company. We affirm the decision of the district court.
 
 I. BACKGROUND
 
 3
 Mr. Ljubo Todosijevic is a permanent resident alien residing in Illinois. Mr. Todosijevic established a business whose main purpose was to import Yugoslavian publications for resale and distribution in the United States. German Language Publications, Incorporated (GLP) already had a similar business and believed that Mr. Todosijevic had interfered unlawfully with some of the contracts GLP held with its Yugoslavian suppliers. GLP sued Mr. Todosijevic in federal district court in New Jersey and the court found him and his unincorporated businesses liable for over $3.3 million in damages for tortious interference with contract, trade libel, and antitrust violations.
 
 
 4
 GLP registered the federal New Jersey judgment in the Northern District of Illinois and began garnishment proceedings on Mr. Todosijevic's supply of Yugoslavian publications as they arrived in the United States at O'Hare Airport and were temporarily stored with the shipper. Attorney Michael Goode represented Mr. Todosijevic in the district court proceedings. The district court allowed Mr. Todosijevic to continue receiving and selling the publications by first posting bonds before obtaining the materials and then tendering the sale proceeds to the court. Mr. Todosijevic, however, could not afford to post the required bond. Consequently, the publications kept arriving and began to pile up in storage.
 
 
 5
 Twice Mr. Todosijevic tried to transfer his importation business to others, apparently in order to avoid the GLP judgment. Both of these transfers were set aside by the Illinois federal district court. However, the publications then began arriving in the United States consigned to K.N.O.A., a company incorporated by Mr. Todosijevic's wife. K.N.O.A. had only one customer, Kopaonik, a company operated by Mr. Todosijevic. The district court found this to be yet another attempt to avoid the New Jersey judgment. To prevent any further fraudulent transfers, on August 1, 1991, the Illinois federal district court entered an order that enjoined the shipper from consigning the materials to Mr. Todosijevic, his attorney, or anyone else acting in concert with Mr. Todosijevic without first posting a bond.
 
 
 6
 To further complicate matters, on August 7, Mr. Todosijevic filed for Chapter 11 bankruptcy and a bankruptcy trustee was placed in charge of his estate. Additionally, on August 15, K.N.O.A. also filed for Chapter 11 and the two bankruptcies were consolidated.
 
 
 7
 On August 26, Attorney Goode told the district court that he had terminated his attorney-client relationship with Mr. Todosijevic. Mr. Goode announced that he had set up a Yugoslavian publication importation and distribution business called Euronews, Incorporated. Mr. Goode requested relief from the district court's August 1 Order which placed bond requirements and other restrictions on receipt of the Yugoslavian publications arriving at O'Hare Airport. On August 28, the district court lifted the bond restrictions and allowed consignment of the publications to Mr. Goode only after it had first received an affidavit from Mr. Goode documenting that Euronews was entirely independent from Mr. Todosijevic.
 
 
 8
 On September 6, GLP filed a motion to stay the district court's August 28 Order because GLP believed it had new evidence that Mr. Todosijevic was participating in Mr. Goode's import business. Judge Shadur reimposed the original order barring receipt of the Yugoslavian materials by Mr. Todosijevic, Mr. Goode, or anyone else acting in concert with Mr. Todosijevic. Mr. Goode then moved for reconsideration, contesting the factual allegations that GLP had made.[2]
 
 
 9
 The district court then conducted a hearing on Mr. Goode's motion to reconsider. It examined all of the new evidence that GLP believed linked Euronews to Mr. Todosijevic and heard testimony from numerous witnesses for both parties. After a thorough review, the district court held that Euronews was independent of Mr. Todosijevic. The district court concluded that GLP had misconstrued some of its new evidence; the court also found that two of GLP's main witnesses were not credible. Finally, the court also ruled that, by the time Mr. Goode established Euronews, Mr. Todosijevic's import business had gone out of existence, in part as a result of GLP's vigor in attempting to have the New Jersey judgment satisfied. Any good will or value that Mr. Todosijevic's business might have had in the past had been eliminated prior to Mr. Goode's creation of Euronews. Thus, the district court determined that Mr. Goode had not unlawfully taken any business opportunities belonging to Mr. Todosijevic when Euronews began receiving the Yugoslavian publications to distribute. Because Euronews was independent of Mr. Todosijevic, GLP could not satisfy its judgment by garnishing any profits Euronews made from the distribution and resale of the Yugoslavian materials. GLP now appeals the district court's decision.
 
 II. ANALYSIS
 A.
 
 10
 GLP contends that the publication business was transferred to Mr. Goode in violation of the law. GLP submits several separate arguments to support this contention. First, GLP claims that Mr. Goode, as Mr. Todosijevic's former attorney, breached his fiduciary duty to Mr. Todosijevic by taking over the publication business. GLP asserts that Mr. Goode usurped Mr. Todosijevic's business opportunities and took the value of his business without demonstrating the fairness of the transaction and without recommending that Mr. Todosijevic seek independent advice. Second, because Mr. Todosijevic was a Chapter 11 debtor at the time that Mr. Goode allegedly took over the business, GLP contends that Mr. Goode needed the bankruptcy trustee's consent before he could begin receiving the Yugoslavian publications. Third, GLP claims that the alleged transfer of the business was a fraudulent conveyance. Finally, GLP argues both that Mr. Goode's business is not independent from Mr. Todosijevic and that the district court ignored evidence and made incorrect factual findings on this issue.
 
 B.
 
 11
 GLP's appeal is premised only upon questions of fact. We review a district court's factual findings for clear error. Comark Merchandising, Inc. v. Highland Group, Inc., 932 F.2d 1196 (7th Cir.1991). Underlying all of GLP's arguments that Mr. Goode was the recipient of an illegal transfer of Mr. Todosijevic's distribution business and that he breached his fiduciary duty to this former client is the premise that Mr. Todosijevic's business was a going concern, capable of being transferred. After an extensive hearing on the matter, the district court held that Mr. Todosijevic's business had ceased to exist prior to Mr. Goode's entry into the Yugoslavian publication import arena. The court stated that no assets were left and no corporate good will or value associated with Mr. Todosijevic's business of importing and distributing Yugoslavian publications existed by the time that Mr. Goode set up Euronews.
 
 
 12
 Because no viable business opportunity existed at the time that Mr. Goode set up Euronews, Mr. Goode could not have breached any fiduciary duty that he had toward his former client and Euronews could not be merely a front for an attempted continuation of Mr. Todosijevic's import business. The district court specifically noted that prior to August 26, 1991 (when Mr. Goode began his business enterprise), Mr. Todosijevic and all of his business entities had become unable to operate the import business. On the basis of the record before us, we cannot disturb, given the deferential standard of review, the district court's factual findings on the state of Mr. Todosijevic's former business. The district court did not err clearly in its determinations. The Yugoslavian publishers refused to deal with Mr. Todosijevic. He owed them large amounts of money for the publications that he had imported from them; he had been unable to pick up the publications as they arrived at O'Hare Airport because of the bond requirements placed upon him by the district court. Moreover, the publishers were aware of his prior attempts to transfer fraudulently the business and avoid GLP's judgment. The publishers also questioned his ability to continue the business after filing for bankruptcy. Moreover, by August 15, 1991, the bankruptcy trustee had recovered all of the assets from Mr. Todosijevic's store. Testimony in the record indicates that Mr. Todosijevic's store remained closed after that time and did not reopen.
 
 
 13
 Moreover, much of the testimony at the district court hearing revolved around questions of credibility. Mr. Goode's interpretation of the events leading up to the establishment of Euronews and his subsequent noninvolvement with Mr. Todosijevic was in stark contrast to the events that GLP and its witnesses portrayed. The district court specifically stated that GLP had mischaracterized some of the evidence that it had presented to establish that Euronews was nothing more than a continuation of Mr. Todosijevic's enterprise. The court also stated that it found troublesome the testimony of several of GLP's witnesses; the court found that two of the investigators employed by GLP had given untruthful testimony. It is well-established that questions of credibility are properly the trial court's domain. We are deferential to a trial court's credibility determinations and shall overturn such decisions only if they are clearly erroneous. Daniels v. Essex Group, Inc., 937 F.2d 1264, 1269 (7th Cir.1991). After reviewing the record, we find no basis upon which to overturn the district court's determinations; we find no evidence that the court clearly erred.
 
 
 14
 Finally, it is important to note that the district court engaged in a lengthy in-depth hearing including the testimony of numerous witnesses to determine the status of Euronews and Mr. Goode in relation to Mr. Todosijevic and his various business entities. The hearing was not superficial and hurried. In the face of two hostile parties and questionable litigation tactics, the district court showed patience and thoroughness in its review of the facts of this case. Thus, contrary to GLP's allegations, we do not believe that the district court ignored evidence regarding the independence of Mr. Goode's business from Mr. Todosijevic.
 
 Conclusion
 
 15
 For the reasons stated above, we affirm the district court's decision.
 
 AFFIRMED
 
 
 *
 The Honorable Robert L. Miller, Jr., of the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Because of the current civil war in the former Yugoslavia and the resulting uncertainty of what that country's status is or will be in regard to its internal republics, we shall continue, for sake of clarity and convenience, to refer to that nation as Yugoslavia throughout this Order
 
 
 [2]
 Additionally, on September 27, Mr. Todosijevic agreed to dismiss the pending bankruptcy case and most of the estate's assets went to GLP. The assets collected by GLP, however, did not satisfy the New Jersey judgment